Good morning, your honors. May it please the court, my name is Mary Mitchell and I'm the attorney for Roy Looza. Appellant Roy Looza is 62 years old. Mr. Looza completed six years of schooling. Mr. Looza has past relevant work as a maintenance repairer and chauffeur. He last worked June 3, 2003. Mr. Looza was treated for psychiatric disorders by Dr. Tahir Bhatti. Dr. Bhatti submitted treatment notes in support of two opinions of Mr. Looza's mental limitations. Submitted on September 15, 2005 and October 20, 2004. Let me ask you a question. Dr. Bhatti, who was a treating psychiatrist, did he ever state explicitly in any of his reports that his patient was unable to work? No, he didn't, your honor. He did state or I'm sorry, she did state that the symptoms from his numerous But he never went on and said a person with these symptoms cannot work. No, he never stated that. That's a decision reserved to the commissioner. She never did say that. When you say reserved, do you mean the doctor is not allowed to say that or The doctor is not allowed to say that a claimant is unable to work and disabled. But Dr. Bhatti didn't really express any limitations. There's just some general language about mental limitations. Is that right? In her September 15, 2005 letter, she did, it was rather general. She did state that because of this list of symptoms, it would encumber or impair his ability to work. Now, in her October 20th opinion, she stated specifically that he had marked limitations in several areas. And then the ALJ rejected that based on inconsistencies with Dr. Bhatti's progress notes. So what was wrong with that basis for rejecting the letter or the work evaluation? The basis for rejecting a treating physician's opinion of a claimant's mental or physical limitations are specific and legitimate. And my argument is that Dr. Bhatti's treatment records and progress notes are consistent with her opinions. They support them throughout the treating relationship. And also that the judge's complete rejection for Dr. Bhatti's two opinions was summed up in one single sentence, stating that they were inconsistent. And it cited a huge exhibit, Exhibit 19-F, without specificity. And there's several entries in Exhibit 19-F that clearly support Dr. Bhatti's state of limitations in her October 20th opinion. I'm not sure I understand exactly. Some people have a mental disease, and 20 milligrams of Lexapro will keep it under control so that they can work. Some people have a mental disease that Lexapro is the right medicine for, but even with 20 milligrams, they can't work. And the doctor doesn't want to give them more. And I can't figure out exactly what Dr. Bhatti is saying. Show me how to read these things. I've got them right here. I think the ALJ read one of them where she said, September 15, he seems to be consistent with medical treatment. That's bad grammar, so it's hard to read. What's the opinion? With psychiatric patients, it's very important for the treatment provider to establish that the claimant's compliant with treatment, coming to appointments, going to group therapy, et cetera, and or compliant with medication, that the claimant is following Dr. Bhatti's instructions. Sure, but what is the opinion on just how sick Louza is? Dr. Bhatti stated that Mr. Louza would have marked limitations in several areas that are outlined in the excerpt of record, pages 13 to 14. Which page? Pages 13 to 14. I'm sorry, that's of my brief. It's excerpt of record, pages 57 to 62. You're talking about the October 20th Mental Residual Functional Capacity Report? Yes, Your Honor. And that report is taken off of the Social Security form. But then the ALJ finds that that's inconsistent with, I'm looking at one of these client progress notes, which indicates that mood improved, no longer depressed, almost no depression, I think is the exact language. The almost no depression statement was in quotations. Why does that make a difference? It does because in treatment records from the psychiatrist or psychologist, they will put in quotations what the patient states during the examination to differentiate that from the treating physician's own opinions. And so when he puts, when she puts something like that in quotations, it means that's, she's taking that directly from the patient in that his impression is that he has almost no symptoms. Are you trying to say that Lusa told the doctor I have almost no depression today? Yes, Your Honor. But the doctor wrote in the chart that he does? The quotes mean Lusa told the doctor almost no depression? Yes. And then what does the doctor say? This is September 26th. He says mood improved. You said in the chart that it would be inconsistent with the statement that is in quotations almost no depression. If Dr. Boddy wanted to endorse that statement that there was almost no depression, she would not have put the quotations. And the fact that she put the quotations is... That doesn't make sense to me. It's a symptom report by the patient, and the doctor can think the patient's right or wrong about, because mentally ill people often lack insight. So it's one thing the doctor considers in making a judgment. Now where is the doctor's judgment exactly? The almost no depression statement was made on September 26th, 2005, but the doctor's opinion was September 15th, 2005, and then again on October 20th, 2005. It's more in depth on October 20th, 2005. So Dr. Boddy's October 20th, 2005 opinion was after that examination. Something that's troubling me, are you arguing basically that the record doesn't support the decision of either the administrative law judge or the district court? Is that what you're arguing? I'm arguing that the ALJs did not follow the regulations, rulings, and case law that state that his reasons for rejecting a treating physician's opinion have to be specific and legitimate. And just stating a vague statement of they're inconsistent with treatment records and pointing to a huge exhibit without being more specific and more legitimate. I raise this question because it seems to me we as an appellate court have to decide whether the people who decided the factual issues in this case had a basis for their decision in the record. That's what we have to decide, isn't it? We're not deciding to know whether he was or wasn't disabled. We're trying to determine whether the decision of the administrative law judge and the decision of the district court upholding that decision, that he was not disabled, whether that is supported by the record. That's what we have to decide, isn't it? Yes, Your Honor. And you say it's not supported by the record? And that the ALJ did not follow case law that states that it should be specific and legitimate, his reasons for rejecting that treating physician. Thank you. Oh, I guess we have a little time for rebuttal, if you want to. Thank you, counsel. Good morning, Your Honors. My name is Amita Bayman-Tracy, and I represent the appellee, the Commissioner of Social Security. Essentially here, the ALJ determined that although Klayment did have some medical problems, when they were treated, he could perform some types of work. And the compliance determined that Klayment's residual functional capacity, such that he could perform work, was that he could perform medium work. Could you talk about page 57 of the excerpt? Here's what's on my mind. I know about the almost no depression, and it's obviously quoting what the patient said, and most diseases go up and down some. So it's one thing in the record, but it's not the whole thing. What I'm interested in on 57 is that the doctor says episodes of deterioration, decompensation, and work-or-work-like settings marked. Ability to perform simple, repetitive tasks marked. Ability to perform detailed and varied tasks marked. Ability to interact with the public two hours a day, supervisors less than two hours a day. Co-workers less than two hours. Sustained capacity to perform work at a consistent pace less than two hours. Also, I read the man's letters in the excerpts, and he sounded nuts. I don't quite see what there is in the record that's really inconsistent with the page 57 evaluation, and I can't imagine hiring anyone with that. That level of ability. Well, the assessment that Dr. Body made here on page 57, in order, I mean, the ALJ does give more weight to the treating physician's opinion. It's a given deference. However, that deference is not absolute if it's not supported by objective medical evidence. And so although you have page 57 here... With mental disease, depression, anxiety, you can't do a blood test the way you can for some diseases and say it's under 40 or it's over 160 or something like that. What are you looking for? Right. Well, but you're looking at the progress notes to see how the claimant is reporting to his physician as to how he's doing, how the medication is improving or not improving his symptoms. And your brief made a lot of that consistent letter, but I couldn't see that it proved anything. I couldn't even understand it. Well, but the progress notes throughout keep saying that, you know, I have progress notes from August 8th, 2005. What page? In the transcript. I'm sorry, I only cited the transcript records here, but in terms of the transcript on August 8th, Dr. Body says that the medications were helping with his dizziness, that his dizziness was unchanged. He reported that the medication was helping his panic attacks and his anxiety. He was sleeping well. Mood was improved. None of that is in quotation marks. You know, and so as the... Oh, I understand what you mean. Yes, no question he said that, but helping doesn't mean the fellow's okay. Right. And that's why the ALJ determined that his residual functional capacity was quite conservative in the assessment that he gave him. He didn't, the ALJ just didn't go out and say he can do any types of work. Look, the thing about helping is often doctors give a medicine, and if it doesn't help, then they reevaluate their diagnosis. If it does help, it suggests their diagnosis is right, but it doesn't mean that the condition is controlled. It may mean that it's controlled. It may mean that the person's fine, but it may not. What it means is it's the right medicine. It's working. Right. But when you look at Dr. Boddy's limitations, these limitations are so extreme that they don't at all match up with the progress notes as they're going along. The progress notes should somehow reflect that he does have these marked limitations. That he is having these problems where he's having marked episodes of deterioration or decompensation. None of these progress notes show that. The progress notes consistently show that his medication that was provided was helping. Well, sure it's helping. I mean, earlier, I think it's earlier, yeah, August 19th, he had major depression with psychotic features. Although he did not have suicidal or homicidal ideation. Well, but that. It sounds like it was a lot worse then. And I believe that you're referring to the examining psychiatrist physician's opinion, Dr. Solomon, who examined, claimed it on August 19th, 2005, where his diagnosis was slightly different. Than even Dr. Boddy's. Yeah, it's worse. Major depression with psychotic features. But even Dr. Solomon says that the claimant can work. And he actually says that, I think it's excerpt of record page 104. Actually, it might be the supplemental excerpts of record at page 104. Got it. Even Dr. Solomon, who gave even a more extreme, I suppose, diagnosis, determined that from a psychiatric point of view, it's not that bad. But even despite that, the ALJ only gave moderate weight to Dr. Solomon's opinion, because based upon claimant's subjective complaints, he determined that claimant did have some functional limitations as related to his mental impairments. That's why the ALJ determined that the claimant should be limited to work in non-public settings and limited to contact with peers and supervisors. So even with this diagnosis, which is worse than Dr. Boddy's diagnosis, that doctor even thought that he could perform some types of work. So substantial evidence does support the ALJ's decision here. That the claimant, although with you, he does have some medical problems. Do you know what this entry means? I don't know what it means. Solomon 104, global assessment functioning, current about 65. Yes. Essentially, when you have a global, the global assessment functioning is a mental examination that psychiatrists may perform on patients. And the number 65 shows that this person would have kind of mild to moderate symptoms, not marked as Dr. Boddy assesses. What would be more, 85 would be more serious? In terms of worse, actually a lower score would have been. Oh, so it's like grade in school, lower is worse. So substantial evidence does support the ALJ's decision here. And if there are no further questions. Thank you, Your Honors. First off, GAF is not an examination. It's an opinion of the examining psychiatrist who takes into account the entire examination, his diagnosis, and kind of distills it down to a numerical value. Also, Dr. Solomon's and Dr. Boddy's diagnosis were nearly identical. Dr. Solomon's findings reflected Mr. Luther's mental difficulties with the psychiatric exam itself. Dr. Solomon and Dr. Boddy differ, however, in their opinion. And the ALJ had a duty to reject Dr. Boddy's opinion according to the standard. And the ALJ's reasons for rejection were not specific nor legitimate. The ALJ had no time constraints in issuing his decision. The ALJ had all the exhibits available. The ALJ had the hearing tape. Thank you, counsel. Luther v. Astor was submitted. We'll hear ECC systems.
judges: Kleinfeld, Ikuta, Friedman